Good morning, Your Honors, and may it please the Court. I'm Linda Coberly, and I'm representing Fiduciary Trust Int'l of California as trustee ad litem for the trust of the Mark Hughes Family Trust. Obviously, the merits of this appeal have to do with an unlawful bankruptcy plan modification, but as I'm sure you've noticed, there are a number of preliminary issues to deal with. First of all, the entire dispute is moot, and it's moot because the modifications never went into effect. So it's your position that would you agree that if any appeal is, hypothetically speaking, not ambiguous, we all go home? Correct. That would be the end of the case, and we submit that that language could not be more explicit, and we've cited quite a bit of California case law that describe what that language means. So that is not only the – first of all, it's an Article III issue, so it is a mootness issue and should come first, but it is also the simplest way to resolve this case, which is simply to hold that the conditional provisions never came into effect, and thus the entire dispute is moot. In addition, the district court incorrectly held that my client lacks prudential standing to appeal, and that holding was incorrect for two separate reasons. First, it's wrong as a matter of state trust law, and the probate court said so. The probate court explained what the specific powers of the trustee ad litem would be, and my client has appeared as trustee ad litem in this case, appears so today in that capacity and appeared so in the bankruptcy court. And in addition, Tower Park defeated an appeal in this court specifically on the ground that my client, the trustee ad litem, was in fact and can challenge the modifications on appeal, and that position was reversed in the district court. So somebody has to be able to raise this objection under the bankruptcy code, and we submit that since this court held at Tower Park's urging that it couldn't be the beneficiary because the trustee ad litem was appealing, this court should permit the trustee ad litem to appeal, and the district court was wrong to decline to do so. On the issue of mootness, as Your Honor mentioned, any appeal is any appeal. It couldn't be clearer. It's a plainly all-inclusive term. In the Girdland case, the California Court of Appeal held that adding a modifier to a term like any reason would be entirely inconsistent with its meaning. The courts below declined to follow the plain language of any appeal because they concluded it was unreasonable. Well, under California law, that is not a basis. So the parole evidence rule under California law is pretty robust, and it does, even if the language is plain, it does say that we're supposed to look at the credible extrinsic evidence to see whether the language is reasonably susceptible to the interpretation. And opposing counsel says in their briefing that the extrinsic evidence, I guess there were declarations by Tower Park and the trust entities prior to FDIC getting involved, to say no, we meant that any appeal was the sort of appeal that we had in mind. So why did the court err in looking at that evidence and deciding it could be construed differently? Well, I think the extrinsic evidence said kind of the flip of what Your Honor just articulated and what my opponent argues. What the extrinsic evidence said was what they did have in mind, what they were most concerned about at that moment, which they said was some sort of collusive appeal between one of the signatories and a third-party creditor. So that may have been what they had most in mind at the time, but as far as I'm aware there is no extrinsic evidence that says that anyone believed or intended the term any appeal to be limited in that situation. And to the contrary, our brief cites evidence that explains that what the parties were most concerned about in negotiating the settlement agreement was finality. And that makes sense because the provisions that were to be approved by the court were to set the tone and the requirements for the party's economic relationship going forward. And it would be very damaging to the party's economic relationship if there was uncertainty going forward about whether the conditional provisions would remain in effect. So if you look at the extrinsic evidence we cite and the extrinsic evidence they cite, the concern was about finality. And it may have been that what they were most worried about was a collusive appeal with a third-party creditor. The term they chose for the contract was broader than that. It was any appeal. Why would a collusive appeal have helped either of the parties? I had trouble understanding that because it seemed like the deal was certainly beneficial to Tower Park. So what was the concern there? I didn't understand it. Well, I'm not sure I understand it either. But there were some shenanigans going on. In fact, recall that this entire settlement was negotiated in a mediation that happened during a trial in the probate court in which these same co-trustees were being, were to be removed as trustees. And they didn't let the probate court know that this was going on, which partially explains the response of the probate court. So there was a lot of shenanigans going on. And obviously, Fiduciary Trust International as trustee ad litem was not in the room, was not in that conversation at all. What we do know is looking at the extrinsic evidence that Tower Park points to, all it says is they may have been concerned about one thing, but the term they chose in the contract is broader than that thing. And there is certainly no extrinsic evidence, none, that suggests that they intended to exclude from the term any appeal an appeal by the beneficiary, Alexander Hughes. So there's no extrinsic evidence that suggests that. So the extrinsic evidence that they have offered does not create the ambiguity that they argue exists. It's simply not relevant to that point at all. In addition, Your Honor, of course, we've cited. Just as a practical matter, help me be sure I fully understand why a lack of finality would hurt your client. Why would a lack of finality hurt my client? What you're concerned about is that you accept this payment, one of these gateway payments, and then the aggregate amount that they owe goes down. So, first of all, my client is not a party to the settlement agreement. My client speaks for the trust, which was a creditor, was and is a creditor. Right. Okay. The overall settlement arrangement decreased the amount of the overall debt owed to my client and the entities it's affiliated with. But in exchange for faster payments, it looked like. No, no. It simply decreased the total by $24 million. It went from like 80-something to 50-something. Yes. So it significantly decreased the total amount of money owed to the trust in exchange for releases that benefited the co-trustees personally and certain faster payments, but not $24 million. So the other issue, by the way, and the other reason that this arrangement is a concern to all creditors and why it would have been important as a plan modification to raise an objection to it, is that the kinds of provisions, the kinds of changes that were imposed, made it actually less likely that Tower Park would be able to successfully develop the property, which was a core part of the plan. How is that? Well, first of all, it had to pay $10 million before it even got started. Right. There were additional limits put in place on vertical construction and so forth that did not exist before. And the exit financing facility, which was to provide some seed money to be able to make this all happen, was decreased by $1.4 million. In fact, these changes actually, according to Tower Park in a pleading they have filed separately, these changes apparently put Tower Park in such a cash-poor position that it had to borrow money and end up in a secret arrangement with one of their insiders to sell the property in exchange for that loan. So that's an allegation they've made separately that we've cited that the court can take judicial notice of. So putting all that together, what that demonstrates is that from the perspective of creditors to the estate, the particular changes that were made to the confirmed plan made it less likely, or at least arguably made it less likely that Tower Park would be able to successfully develop the property, which was the whole point of the confirmed plan for the benefit of the creditors. So these were material changes that had that impact, and they ultimately resulted in a significant issue, cash issue, for Tower Park. So as a practical matter, what were the complications that were caused by the Hughes appeal? Well, as a practical matter, the approval order was supposed to become final by February 2013. Three years later, there were still ongoing appeals that involved the beneficiary. And what was it? For three years. You at that point did not have finality or certainty about what issues you think you were entitled to have them. In fact, we don't have finality today about whether the conditional provisions ever went into effect. And our position, of course, is that they didn't. And according to, you know, it was that issue, as you may recall, this $10 million extension payment. Right. When Tower Park ostensibly offered to pay that, they offered that payment specifically on the condition that the successor trustee agree that that payment would be accepted under the contract. It was specifically conditioned on that fact, that understanding. And my client said, well, the successor trustee said, no, that's not the case. We're not going to waive anything about this. We're not going to agree that the conditional provisions are in effect because we think they're not. And as a result, they refused to pay. They now say that refusal was unreasonable, was quite reasonable, but that's not the test for a good faith tender. And we've made that separate argument as an additional basis why this case is moot. But that's one consequence. I mean, the parties sitting here today do not have clarity on whether the conditional provisions that were put, that were ostensibly approved by the court in 2013 are in effect today. That's because of your appeal, though, right? No, it's actually because of the beneficiary's appeal. We're not arguing that our appeal created the uncertainty. The beneficiary's appeal is what created the uncertainty. It was filed within the period contemplated. But the Ninth Circuit rejected that. The Ninth Circuit held that as it turned out, that appeal didn't have bankruptcy standing. And then the district court affirms the bankruptcy court and says the conditional provisions went into place, the tender was good, everything is go with the conditional provisions with the settlement agreement. And then you appealed. I mean, had you not appealed, then it would have been final at that point, right? I suppose it would have been final. Well, no. I mean, the provision in the contract was not satisfied. But had we not appealed, I guess the uncertainty would be over. But the reason we went down this road, I think, is just to explore what could the parties have contemplated by the term any appeal and by requiring finality by a particular date. The important thing, frankly, is not whether it turned out that that was disruptive. The important thing is what does that term mean at the time? And did the Alexander Hughes appeal create a failure of that contractual condition? They chose a very term, a very broad term, any appeal. They didn't say any appeal other than the beneficiary. They knew about the beneficiary. In fact, they knew that he was a very active litigant. He was at that moment trying to get the trustees removed. So they didn't write what Tower Park says they intended. They chose a broader term and they chose it for a good reason no matter what happened after that. Do you want to save the rest of the time? I do. Thank you. Thank you. May it please the Court. Jeremy Richards, appearing on behalf of Appalachia Tower Park Properties. Your Honor, there were obviously two threshold issues, jurisdictional issues, and appellant and appellee have very, very different views. The decision that is being appealed, the decision of Judge King, is that FTIC, in whatever capacity it may have been acting, and I'll address that in a few minutes, does not have standing to appeal an order approving a settlement to which the FTIC represents is a party. That is the specific ruling that FTIC, in its capacity as trustee ad litem, is a representative of a party before the bankruptcy court that got exactly what it bargained for. So FTIC, I was looking at the transcript. It wasn't exactly clear. But in the hearing, seemed to join Hughes' objections and say, we want more time to think about this. And to the extent he has procedural objections, we join them. So FTIC did not agree, did not consent to the entry of the stipulated judgment. Is that correct? Am I reading that right? Your Honor, there are two things. Number one, there is no dispute, but that the trust was bound to the settlement agreement. Did FTIC, that wasn't my question. My question was, did FTIC in that hearing consent to the entry of the stipulated judgment? They did not, Your Honor. Their objection was, and contrary to the position that's being spun in this appeal, that they objected to the settlement as a creditor. And let's be clear on this point, Your Honors. The trust, which was the only entity that FTIC represented at that point, was owed $12,000. While they contend that they were the single largest creditor of the Hughes estate, the bulk of the monies was owed to two limited liability companies, which FTIC did not, in fact, come to control until March 26th. But the objection they made in joining in procedural, excuse me, Your Honors, in joining in procedural objections that had been made by Mr. Hughes, the objection they made was not as a creditor. They never said to Judge Russell, and they've never said anywhere, that the settlement is bad for creditors. That argument was never made. Judge Russell found to the contrary. Judge Russell found that the settlement... So does that make a difference? Because I thought your argument was that they were stepped into the shoes of the three trustees. So if they're essentially another trustee of the trust but authorized by the probate court for that settlement purpose, it doesn't really matter whether they raise creditors or not because they're speaking for the trust. I thought that was your position. Yes, our position is that. So our position is twofold. So if the trust goes into court and doesn't consent to the settlement agreement, then are you saying that if they don't consent to the entry of judgment on the settlement agreement, they're nevertheless, they've waived their ability to challenge the settlement agreement? No, Your Honors. What we are saying is quite simply, and it is the law of the case, it is the record, the trust was bound to the settlement agreement. Well, they were as a matter of contract, of course, because they had signed the settlement agreement. The question is, are they, can they, like any other party to a contract, you can challenge the contract and say there was a mistake or you can say the other side breached it or whatever it is. So I don't see why a party to a contract can certainly challenge a contract regardless of being a party. Am I misunderstanding that? Well, they can, but then they're at breach because the very contract they're trying to challenge on behalf of the trust is a contract that they were bound to use reasonable efforts to obtain approval of. So if they, so they would be in breach and they would say mutual mistake. But I mean, I don't see why that would deprive them of standing. I guess it seems like in order to say they don't have standing, you have to say they waived their ability to appeal or to argue that the contract was unfair because they accepted the consent judgment, but they didn't. There's a critical element here, Your Honors, and it's set forth very clearly in the record. Judge Russell, the trial court judge, was very unclear as to who FTIC as trustee ad litem was and what their position was as to the settlement agreement. And if you look at the transcript of the hearing, most of the hearing is Judge Russell asking FTIC's counsel these specific questions and finally getting the answer, which is that, number one, there was a concession made on the record, which is part of Judge Russell's conclusions of law. The trust is bound to the settlement agreement. And then number... They signed the contract. I guess I don't see why that's so amazing. Well, but then, but they were bound to support the contract. Well, they breached it. But I mean, that doesn't affect standing, right? I mean, people breach contracts all the time. But that's a contractual issue. Yeah. It doesn't really matter. The issue of prudential standing and the cases that we have cited is if I am party to a settlement or a consent decree or consent judgment and the court approves what I am asking it to approve, I'm not an aggrieved party. And you consent to that approval, but they didn't consent to the approval. Let me just move for a moment on to the any appeal issue as to whether it's moot or not. So opposing counsel says that there was no extrinsic evidence indicating that any appeal was limited to certain parties. The only evidence that was presented to the court was that the trust in the Tower Park had specific concerns, but not that they had limited the breadth of that language. Can you address that, please? Yes, I can. Number one, the testimony that was elicited at the trial court was the testimony of two lawyers representing the trust. So the concern that both of those lawyers testified to, which are undisputed factual findings, are that the reason they wanted finality is apparently based on preceding course of conduct. They were concerned, and the testimony was quite specific, that either an insider, an affiliate, or a creditor of Tower Park Properties might file a frivolous appeal that would create some uncertainty over finality. Does it say that? I'm sorry, Your Honor? Does it say that? It does not say that, Your Honor. It does say any appeal. That is the express language. Judge King, in a lengthy footnote in his opinion, cites California law that says that just because any has been found unambiguous in other circumstances, it doesn't mean that it is unambiguous per se in the context in which it appears. What's the ambiguity here? I mean, any appeal, what's ambiguity? The ambiguity, Your Honor, is if you take it literally, particularly in this case, it means ---- Take it figuratively, literally, whatever way you want. I mean, these were sophisticated parties. This is a transaction, you know, $7,500 million transaction. Both sides are represented by able counsel. They said any appeal. Why should we do anything other than just respect the language used? I mean, we're not talking about contracts of adhesion. We're not talking about, you know, credit card member agreements or anything like that. Sophisticated parties, sophisticated counsel. Because the context is important. What we are talking about here is this wasn't a settlement agreement that was to be approved in two courts. It was only to be approved in the bankruptcy court. And only certain parties have standing in a bankruptcy court. And if we look at the facts, and it was conceded by appellant's counsel, the operative appeal here is not the one that was made by FDIC, because that appeal was not made within the 14-day window. It's the appeal by Mr. Hughes. The Hughes appeal. Who is not even a creditor of Tower Park Properties. You hire lawyers and pay them the big bucks to anticipate and deal with these problems. I mean, these are issues that should have been rehearsed in the, you know, in the drafting conference. If that's what, if people were concerned about something other than any appeal, the high-powered lawyers take care of that across a conference table. If lawyers were perfect, Your Honor, we'd never have disputes over contractual interpretation. California has a vast case law on this issue. So opposing counsel says it's no surprise that Hughes was all worked up about how the trustees were handling the estate. And so that was scarcely a surprise that Hughes might be appealing the settlement. I think, no, I wouldn't agree with that at all. From a bankruptcy's perspective, the It was a surprise. Nobody knew. The trustees were not aware that Hughes was trying to unseat them. Oh, no, they were well aware of that. But bear in mind, Your Honor, they were pursuing a remedy in probate court. And as this Court found in the appeal that Mr. Hughes pursued, the trustee or the trustee at Lyte M, or as it now is, the interim successor trustee, now FTIC has all the powers of a trustee, the trustee had a remedy. And it was a remedy that was cited to the probate court when Mr. Hughes first sought an emergency motion seeking to remove the trustees. In fact, the court only granted a limited remedy, which was the trustee at Lyte M. You're saying it would have been a complete surprise to the trustees or to the parties that Hughes might appeal the settlement agreement. It should have been a complete surprise to anyone in that bankruptcy court, yes. And if you look at the record, the only reason Judge Russell heard from Mr. Hughes' counsel was that he gave standing to FTIC because FTIC had represented that they were a successor trustee to the trust. And so why would it have been a surprise? Because he was, as I understand, he was complaining about how they were handling the estate. And when he found out about the settlement, he went to the probate court to get the remedy conceded. Do I have the timing wrong? That's not a surprise, Your Honor. But as FTIC concedes in its reply paper, its remedy is elsewhere. Its remedy is in the probate court. The argument they were raising when they appeared. So if lawyers were perfect, he would never have appealed because he would have known his remedy was in the probate court, right? But that's not something that would have been anticipated, that he might appeal. I do not believe it was within the reasonable expectation of the parties that someone who this very court has found had no standing in the bankruptcy court would be in a position to file, quote, any appeal which would have the effect of completely undermining a transaction that were at the time the authorized trustees of the trust had entered into. So opposing counsel says there was an interest in avoiding delay. And so, of course, any appeal could delay the process. Is that incorrect? The answer is I'm not sure, Your Honor. This was a provision that was put in at the request of the trust. And there's only limited evidence in the record as to what the intent was, which is the testimony of Elizabeth and Paul Walker. I was not personally involved at that time. So, frankly, I'm not sure what that was about. But the point that I will make, while we're on the issue of poor drafting, is that if the issue was finality of an order, then the drafting was very, very poor because the, as Judge King noted, the settlement itself creates its own definition of finality. It was the filing of, quote, any appeal within a 14-day period. Frankly, if an appeal had been filed and then dismissed, which is what Taupok attempted at one point, arguably there might not have been finality. So there was a contractual provision which itself baked in quite a lot of ambiguity in this whole process. But the fundamental point is that in terms of reasonable interpretation of the settlement agreement, I think it would have been unreasonable to interpret it in a way that would have allowed a complete interloper to the bankruptcy proceeding and also the beneficiary of a trust that had already bound itself to a settlement agreement to be able to come into bankruptcy court and say, all bets are off. To me, that is an inconceivable and completely unreasonable interpretation of the contract. And if one thing California law does require a court to do, it is to come up with a reasonable interpretation of the party's objective intent. And the intent we get from the attorneys for the trust comes straight out of their mouths. And with that, I think my time is up. Thank you, Your Honors. You have a minute and a half for rebuttal. First of all, Your Honors, a premise I heard a number of times in counsel's comments was that the trust is bound. And that's just not true. A trust is a relationship to property. It's not a legal person that signs a contract. The parties that are bound are the trustees who are holding title to the property. And in this event, and that's why, by the way, and I'm going to read from this court's ruling in the beneficiary's appeal at page 460, footnote 8, the trust was not a party to the settlement. So the idea that there's no dispute that the trust is a party to the settlement is totally wrong. This Court's actually held the opposite and recognized that the trust is not a party to the settlement. The trustees were parties to the settlement, both personally and as representatives of the trust. And their obligations pass to someone else only if the probate court says so. And here the probate court didn't say so. The probate court appointed the trustee ad litem for a very limited purpose. And it later clarified very specifically that the act that the trustee ad litem is not bound by actions and obligations undertaken by the co-trustees. That was the whole point, was that the trustee ad litem was to be in a position to raise objections that were allowed under the bankruptcy code. Could the trustee ad litem also file some other, do something else to upset the agreement? I suppose, maybe. But the only place to raise the infirmity of these plan modifications under the It's also the case, by the way, that counsel for the trustee ad litem never admitted the trustee was bound. What he said was he's the trustee ad litem. As Your Honor noted, the transcript is a little unclear. But you should know that the order appointing the trustee ad litem was before the court the whole time and was read in significant part into the transcript. So there was no confusion in the bankruptcy court about the capacity in which the trustee ad litem was appearing. The easiest way, of course, to resolve this case, though, is mootness. And on the any appeal point, I just wanted to note that it wasn't so obvious that Alexander Hughes would not have had standing to raise an objection in the bankruptcy court. The bankruptcy court held he did have standing, actually. The bankruptcy court recognized that both the trustee ad litem and Alexander Hughes had standing to object in the bankruptcy court and ruled on their objections on the merits. Obviously, we are now appealing, and because the court addressed all those issues, there's no waiver problem. We're now pursuing all of those objections on appeal just like this Court contemplated that we would when it dismissed the beneficiary's appeal. And we submit that this Court should, if it finds that the case is not moot, the Court should go ahead and reach the merits. The easiest way to resolve the case, again, though, of course, is to hold that it is simply moot because the conditional provisions did not become effective. Thank you very much. Thank you. Okay. We appreciate your arguments. The case of Fiduciary Trust Tower Park Properties is submitted, and we're adjourned for this session. All rise.
judges: Parker, Hawkins, Ikuta